EXHIBIT D
Pleadings Asserting Causes of Action & All Answers

Attached are copies of:

1. Plaintiff's Original Petition and Request for Disclosure (certified copy); and

2. Defendants Encana Oil & Gas (USA) Inc.'s and Raymond La Luz's Original Answer and Request for Disclosures.

# EXHIBIT D-1

10/26/2018 2:37 PM
Chris Daniel - District Clerk Harris County
Envelope No. 28595363
By: Nelson Cuero
Filed: 10/26/2018 2:13 PM

**CAUSE NO. _____**



| | | |
|---|---|---|
| **LONJINO LARA AND RAQUEL LARA, INDIVIDUALLY AS NEXT FRIENDS OF E.L., A MINOR,** | § § § § | **IN THE DISTRICT COURT** |
| *Plaintiffs,* | § § § | |
| **VS.** | § § | |
| | § § | **_____ DISTRICT** |
| **ENCANA OIL & GAS (USA), INC., RAYMOND LA LUZ, and CAMERON INTERNATIONAL CORPORATION,** | § § § § § | |
| *Defendants.* | § § | **HARRIS COUNTY, TEXAS** |

**PLAINTIFFS' ORIGINAL PETITION
AND REQUESTS FOR DISCLOSURE**

COME NOW, Plaintiffs Lonjino Lara and Raquel Lara, individually and as next friends of Emily Lara, a minor, and make and file this their Original Petition, complaining of Encana Oil & Gas (USA), Inc., Raymond La Luz, and Cameron International Corporation, and Requests for Disclosure to all defendants, and would show unto the court as follows:

**I.
VENUE**

1.      Venue is proper in Harris County under Texas Civil Practice & Remedies Code section 15.002 because one or more of the defendant corporations maintain their principal office in Texas in Harris County, and/or because all or a substantial part of the events or omissions giving rise to the claim occurred in Harris County.   CPRC §15.002(a)(1)&(3).

## II.
## JURISDICTION

2.     This court has both general and specific jurisdiction over the corporate defendants, who at all times relevant to suit, maintain offices and extensive operations in Texas from which they derive substantial benefit, including the exploration and production in the Eagle Ford shale. Defendant La Luz is a natural person residing in the State of Texas.

3.     The subject matter in controversy is within the jurisdictional limits of this court.

4.     Plaintiffs seek monetary relief over $1,000,000.00.

## III.
## DISCOVERY CONTROL PLAN

5.      Plaintiffs intend to conduct discovery under Level 3 of the Texas Rule of Civil Procedure 190.4.

## IV.
## PARTIES

6.      Plaintiffs Lonjino and Raquel Lara, Individually and on behalf of their minor daughter Emily Lara, reside in Karnes County, Texas.

7.     Defendant Encana Oil & Gas (USA) Inc., is a foreign corporation, whose registered office is 1800, 855 – 2nd Street, SW, Calgary, AB T2P 2S5, with offices in Texas, and is authorized to do business in Texas, and may be served with process by serving its registered agent for service of process, CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, TX 75201-4234 in Dallas County, Texas.  Defendant will be served by private process server.  Service is hereby requested at this time.

8.     Defendant Raymond La Luz is a natural person residing at 237 Shamrock Rd, Floresville, Texas 78114, and working as a production manager for defendant Encana in Karnes County, Texas, including the Patton South Trust Production facility, and advertises his services as follows:

Certified Document Number: 82333330 - Page 2 of 29



Raymond La Luz • 3rd
Production Coordinator at Encana Corporation
Karnes City, Texas

Encana Corporation
Gulf of Mexico
See contact info

Defendant Raymond La Luz will be served by private process server.  Service is hereby requested at this time.

9.      Defendant Cameron International Corporation is a Houston-based company that has structured itself on paper as a foreign corporation.   At all times relevant to suit, Cameron International's headquarters and its high-level officers have directed, controlled, and coordinated the corporation's activities from the Houston office.   Cameron International provides oilfield equipment, products, systems, supervision, operation, maintenance, repairs, technical assistance, and other services to the oil and gas industry, including the subject operations and equipment of Defendant Encana.   Cameron International is also known for having provided the blowout preventer at issue in the BP disaster.   Its principal office is located at 1333 West Loop South, Suite 1700, Houston, Texas 77027, and may be served by serving its registered agent for service of process, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.   Defendant will be served by private process server.  Service is hereby requested at this time.

## V.
## FACTS

10.     Lonjino and Raquel Lara built their retirement home on a piece of land that was, when they purchased it in 2008, a scenic rural landscape of green gently rolling hills outside of Kenedy

in Karnes County, Texas.    The Lara's lived on their idyllic plot of land, raising their daughter.

They also kept a small herd of goats and held barbeques for their family and friends.



11.      In 2015, Defendant Encana purchased the surrounding lots next door.  In keeping with the

menacing image of the flaming skull that the Encana production manager represents on his profile

for business purposes, the Laras' lives, and home would be overshadowed by the flames of deadly

flaring and the toxic fugitive gases.  The Karnes Trough had become the most profitable position

in the Eagle Ford basin.    Encana built an oil and gas processing plant mere feet from the Lara's

home (closer than it represented on its application).  Time would tell that the defendants value only

profits, and have no respect for the lives or property of nearby residents.



Certified Document Number: 82333330 - Page 4 of 29

12.     The facility at issue is named the Patton Trust South Production Facility, and it receives natural gas from onsite wells as well as pipelines. It consists of separators, heater treaters, line heaters, compressor engines, cooler engines, vapor recovery units ("VRU"), oil/condensate and produced water storage tanks, a process flare, a utility flare, vapor recovery towers ("VRT"), a glycol unit, lease automatic custody transfer ("LACT") units, oil/condensate and produced water loadouts, and other equipment.

13.     Cameron International, from its headquarters in Houston, directs and provides equipment, products, technical assistance, operations specialists, and other services for the operation of the Patton Trust facility. Cameron International provides its own employees to operate, supervise, and repair equipment, promoting its expertise in pressure control, processing, separation, flow control, and compression systems.

14.     At all times relevant to suit, Defendants maintained a reckless disregard for the lives and property of people living near the subject facility.

15.     The rumbling flare and black smoke of the Patton Trust facility is only feet from the Lara's home, and its deafening noise continually shakes the walls of the house and blankets the family with a smell they would later learn is Benzene and other harmful emissions like Formaldehyde, Volatile Organic Compounds (VOC), Nitrogen oxides (NOx), Sulfur Dioxide (SO2), and particulate matter. The maddening noise and bone-shaking vibrations continually rattle the Lara's inside their home.

16.     In 2015, the Lara's home, and the homes of others in the region were sprayed with a blanket of oil from a large blowout. At the time, that seemed like the worst thing Encana would do to them and their home. But over time, they began to feel that more was happening to them. They have suffered eye irritation, respiratory difficulties, nosebleeds, rashes, nausea, and

headaches.   The day to day operations of the plant have taken a toll on their health and threaten their lives.

17.      In addition to the constant venting and flaring, activists have monitored the Patton Trust facility through FLIR infrared camera and filmed emissions continuously leaking fugitive hazardous gases emitted by equipment throughout the facility, including the equipment provided, maintained, and supervised by defendant Cameron International.

18.      Lonjino was the first to become seriously ill in the family.  He has long suffered from flu like symptoms, which the Lara's now know to be chemical pneumonia.  His daughter and wife are now starting to suffer a similar decline in their health.

19.      The actions and inactions of Defendants Encana Oil & Gas (USA) Inc., Raymond La Luz, and Cameron International Corporation (sometimes collectively referred to simply as "Defendants") and their agents, assigns, and/or predecessors-in-interest, whether taken separately or together, caused both sudden and continual releases, spills, emissions, and discharges of hazardous gases, chemicals, and industrial/hazardous wastes, which caused damage to Plaintiffs, including but not limited to the following: unreasonable fear, apprehension, offense, discomfort, annoyance, sickness, injury to physical health, impairment of physical health, exacerbation of physical health and/or preexisting health conditions, harm from assault on Plaintiffs' senses, nausea, loss of peace of mind, emotional harm/distress, inconvenience, deprivation of enjoyment of property; injury to Plaintiffs' animals and livestock; damage to the natural resources of the environment in and around the Plaintiffs' property; loss of use and enjoyment of Plaintiffs' property; diminution of Plaintiffs' property value; constructive eviction of Plaintiffs from Plaintiffs' property; loss of Plaintiffs' quality of life; and other damages.  Plaintiffs' causes of

action and damages stem from the actions and inactions of Defendants from their production and processing activities next door to the Plaintiffs' home.

20.     Defendants are involved in the extraction and processing of oil and gas and are involved in exploring, contracting, licensing, supplying, manufacturing, building, erecting, assembling, drilling, fracking, extracting, operating, using, supervising, and/or managing personnel, equipment, and/or machinery used in oil and gas drilling, completions, production, refining, storage, and transportation (hereinafter collectively referred to as "Defendants' activities"), which equipment, machinery, and/or processes include but are not limited to drilling rigs, pipes, pumps, valves, tanks, separators, vapor recovery towers, vapor recovery units, heater treaters, line heaters, compressor engines, cooler engines, vapor recovery units ("VRU"), oil/condensate and produced water storage tanks, process flares, utility flares, vapor recovery towers ("VRT"), glycol units, lease automatic custody transfer ("LACT") units, oil/condensate and produced water loadouts, trucks, and other equipment (hereinafter referred to as "instrumentalities"), which instrumentalities are dangerous and within Defendants' exclusive control.  Upon information and belief, Defendants are responsible for Defendants' activities, actions, and/or inactions and the location identified above, respectively.

21.     At all times relevant to suit, Defendants' activities required the use of equipment, machinery, and/or processes which produce releases, spills, emissions, and discharges of hazardous gases, chemicals, and industrial/hazardous wastes.

22.     Defendants have been aware for decades that exposure to the chemicals, compounds, and metals in Defendants' activities create adverse health effects to individuals exposed thereto, which create various adverse health effects in individuals exposed thereto, including but not limited to:

Certified Document Number: 82333330 - Page 7 of 29

- **Pulmonary Effects:** Pulmonary Toxicity is the result of hydrocarbon aspiration. The lower the viscosity and high the volatility, the greater the risk of pulmonary aspiration. The hydrophobic nature of hydrocarbons allows them to penetrate deep into the tracheobronchial tree, producing inflammation and bronchospasm. The volatile chemical may displace alveolar oxygen, leading to hypoxia. Direct contact with alveolar membranes can lead to hemorrhage, hyperemia, edema, surfactant inactivation, leukocyte infiltration, and vascular thrombosis. The result is poor oxygen exchange, atelectasis, and pneumonitis. Respiratory symptoms generally begin in the first few hours after exposure and usually resolve in 2-8 days. Complications include hypoxia, barotrauma due to mechanical ventilation, and acute respiratory distress syndrome (ARDS). Prolonged hypoxia may result in encephalopathy, seizures, and death.

- **GI Effects:** Local irritation is the usual GI manifestation of hydrocarbon ingestion. Abdominal pain and nausea are common complaints. Vomiting increases the likelihood of pulmonary aspiration.

- **CNS effects:** Hydrocarbon toxicity produces various CNS effects. Initial effects are similar to the effects observed in patients with alcohol intoxication. Narcotic-like depression may also be observed. Euphoria may develop, as in alcohol or narcotic toxicity. Eventually, lethargy, headache, obtundation, and coma may follow. Seizures are uncommon and are believed to be due to hypoxia.

- **Cardia effects:** Dysrhythmias are major concern. Etiologies include hypoxia, myocardial sensitization to catecholamines, and direct myocardial damage. Sudden death has been reported as a result of coronary vasospasm due to hydrocarbon inhalation.

- **Other effects:** Hydrocarbons are reported to cause bone marrow toxicity and hemolysis. Chlorinated hydrocarbon toxicity may cause hepatic and renal failure, and toluene toxicity may lead to renal tubular acidosis. Direct contact with the skin mucous membranes may cause effects

ranging from local irritation to extensive chemical burns. In addition, myriad of other health effects include but are not limited to the following: headaches; migraines; body aches; rashes; scarring; sores in the nose, ears, and throughout body; nose bleeding; ringing in the ears; dizziness; nausea; drowsiness; rapid or irregular heartbeat; tremors; confusion; irritation of the stomach; coughing; choking; fever; tachypnea; grunting; wheezing; lethargy; ataxia; abdominal pain; arrhythmia; anisocoria; depression; asthma; and toxic encephalopathy.

23.    Despite Defendant's knowledge, Defendants engaged in the subject activities, actions and/or inactions around Plaintiffs' Property at the various well sites identified above.

24.    Defendants' Activities, actions, and/or inactions, individually and/or collectively, have created an atmosphere where Plaintiffs are/were under constant, perpetual, and inescapable assault of Defendants' releases, spills, emissions, and discharges of hazardous gases, chemicals, and industrial/ hazardous wastes created by Defendants.

25.    Due to Defendants' Activities, actions, and/or inactions, Plaintiffs began experiencing and/or were diagnosed with serious health effects including but not limited to the following: unreasonable fear; apprehension; offense; discomfort; annoyance; sickness; injury to physical health; impairment of physical health; exacerbation of physical health and/or preexisting health conditions; harm from assault of Plaintiffs' senses; nausea; loss of peace of mind; emotional harm/distress; inconvenience; deprivation of enjoyment of property; headaches; migraines; body aches; rashes throughout the body; permanent scarring; open sores in the nose, ears, and throughout body; chronic nose bleeding; ringing in the ears; dizziness; nausea; drowsiness; rapid or irregular heartbeat; tremors; confusion; irritation of the stomach; coughing; choking; fever; tachypnea; grunting; wheezing; lethargy; ataxia; abdominal pain; arrhythmia; anisocoria; depression; and asthma and/or asthma-like symptoms.

26.     Due to Defendants' Activities, actions, and/or inactions, Plaintiffs have been forced to seek medical attention for their physical injuries.

27.     Due to Defendants' Activities, actions, and/ or inactions and upon medical instruction from Plaintiffs' environmental health specialist, Plaintiffs have been forced to evacuate their home at various times.

28.     Due to Defendants' actions, and/or inactions, Plaintiffs have suffered significant damages, as detailed more fully below.

29.     Defendants' Activities, actions, and/or inactions were effectuated by Defendants' employees, agents, service providers, officers, directors, assigns, and/or individuals under the control or direction of Defendants. As such, Defendants, each of them, are responsible/liable for the following claims and causes of action detailed below and herein, which responsibility/liability includes but is not limited to: Aiding & Abetting; Assisting & Participating; Concert of Action; Respondent Superior; Res Ipsa Loquitur; Nondelegable Duty; Partnership; and Joint Enterprise theories of liability.

30.     Due to Defendants' Activities, actions, and/or inactions, Plaintiffs bring the following claims and causes of action against Defendants-wit:

## VI.
## NEGLIGENCE – ALL DEFENDANTS

31.     Plaintiffs re-allege all of the allegations in the previous paragraphs, as though set forth fully herein.

32.     In addition, or in the alternative, Defendants are liable to Plaintiffs for Negligence.

33.     Defendants owed the following legal duties to Plaintiffs when conducting their Activities, actions, and/or inactions – to wit:

a)    Duty to operate under the Reasonable Prudent Operator Standard;

b)    Duty to prevent injury to others when it reasonable appears or should appear that in the exercise of their lawful rights others may be injured by a dangerous condition that was created by the individual;

c)    Duty to exercise reasonable care to avoid a foreseeable risk of injury to others;

d)    Duty to take affirmative action to control or avoid increasing the danger from a condition that has been at least partially created by the individual's conduct;

e)    Duty to use ordinary care in protecting others from peril when the peril is under the individual's control;

f)    Duty to promptly repair any leaks in tanks, pits, pipelines, and engines;

g)    Duty to use reasonable care at all times in all of Defendants' operations on the leased premises to prevent injury or damage to livestock, buildings, or other property of the Lessor;

h)    Duty to be responsible for all acts occurring as part of its operations on the leased premises whether they are reasonably foreseen or unforeseen;

i)    Duty to ensure that Defendants' operations and equipment do not cause or contribute to a nuisance or contamination, including, but not limited to, noise levels, emissions into the air, or discharges into soil or water;

j)    Duty to not depreciate the lessor's and neighboring properties interest;

k)    Duty to operate lease with reasonable care;

l)    Duty to use successful modern methods of production and development;

m)    Duty to neighbors to minimize the impact of Defendants' Activities on surface estate neighbors;

Certified Document Number: 82333330 - Page 11 of 29

n)      Duty to use ordinary care in maintaining the premises in a safe condition by inspecting the property for any dangerous conditions and by making safe any latent defect or giving warning of any defect;

o)      Duty to use reasonable care in maintaining the portion of the leased premises that the lessor is in possession or control of;

p)      Duty to install and use VRUs at clustered well sites;

q)      Duty to install and use Vapor Combustors/Flares at clustered pad sites and single well sites;

r)      Duty to use green completions during flowback;

s)      Duty to not test a well by open flaring;

t)      Duty to use infrared cameras to perform frequent and routine leak detection and leak remediation at well sites;

u)      Duty to use modern equipment and machinery - including electric rig as opposed to diesel rigs;

v)      Duty to conduct frequent and routine emissions monitoring;

w)      Duty to perform a community impact study before conducting Activities;

x)      Duty to create a traffic control plan when operating near residences;

y)      Duty to not conduct hydraulic fracturing at night;

z)      Duty to hire/train/manage/supervise intelligent, respectful, and skilled employees/contractors;

aa)     Duty to monitor the use of Vapor Combustors/Flares for efficiency;

bb)     Duty to follow statutory law - Texas Administrative Code, TITLE 30 - ENVIRONMENTAL QUALITY, Texas Commission on Environmental Quality (TCEQ)

- Chapter 101. § 101.4 NUISANCE, Tex. Health & Safety Code Ch. 382- §§ 382.003(12), 382.0518, 382.085(a), (b); Tex. Water Code§ 7.051-53, Tex. Penal Code Ann.§ 22.01 - ASSAULT, Tex. Civ. Prac. & Rem. Code ("CPRC") § 75.002 (h), Tex. Penal Code Ann. § 28.04 - RECKLESS DAMAGE OR DESTRUCTION OF PROPERTY, et seq.; and

    cc)    Duty to keep the leased property in a safe condition.

34.    The above- list is by no means exclusive, and Plaintiffs do not waive/limit their ability to submit additional evidence on the issue of duty at the time of trial.

35.    Defendants knew or should have known that Defendants' Activities, actions, and/or inactions were negligent.

36.    Defendant breached the duty to Plaintiffs through Defendants' Activities, actions, and/or inactions, in the following non-exclusive ways:

    a)    When Defendants failed to act as a prudent operator;

    b)    When Defendants caused releases, spills, emissions, and discharges of hazardous gases, chemicals, and industrial/hazardous wastes through Defendants' Activities, actions, and/or inactions, which releases, spills, emissions, and discharges migrated to Plaintiffs' Property through the air;

    c)    When Defendants made physical contact with Plaintiffs' person through Defendants' releases, spills, emissions, and discharges of hazardous gases, chemicals, and industrial/hazardous wastes created by Defendants;

    d)    When Defendants caused Plaintiffs' emotional distress through Defendants' releases, spills, emissions, and discharges of hazardous gases, chemicals, and industrial/hazardous wastes created by Defendants;

e)      When Defendants failed to properly supervise personnel utilizing Defendants' equipment, machinery, and/or processes, which failure to supervise resulted in releases, spills, emissions, and discharges of hazardous gases, chemicals, and industrial/hazardous wastes through Defendants' Activities, actions, and/or inactions;

f)      When Defendants failed to properly hire, train, supervise, or manage the employees and contractors participating in or conducting Defendants' Activities, actions, and/or inactions;

g)      When Defendants failed to maintain Defendants' equipment, machinery, and processes, which failure to maintain resulted in releases, spills, emissions, and discharges of hazardous gases chemicals, and industrial/hazardous wastes through Defendants' Activities;

h)      When Defendants failed to maintain the premises in a safe condition by inspecting the property for dangerous conditions or latent defects and by making safe or giving warning of any dangerous conditions and/or latent defects;

i)      When Defendants' Activities, actions, and/or inactions were conducted in contravention of the standard of care that a prudent operator would conduct itself under the same or similar circumstances;

j)      When Defendants caused releases, spills, emissions, and discharges of hazardous gases, chemicals, and industrial/hazardous wastes through Defendants' Activities, actions, and/or inactions, which releases, spills, emissions, and discharges, taken in the aggregate and given  the proximity and numerosity of Defendants' well sites and Activities, caused and/or combined to cause  Plaintiffs'  damages, which Defendants knew or should have known would result due to Defendants' Activities, actions, and/or inactions;

k)     When Defendants failed to install and/or utilize available environmental control technology that would remediate Defendants' releases, spills, emissions, and discharges of hazardous gases, chemicals, and industrial/hazardous wastes through Defendants' Activities, actions, and/or inactions, which releases, spills, emissions, and discharges, taken in the aggregate and given the proximity and numerosity of Defendants' well sites and Activities, caused and/or combined to cause Plaintiffs' damages, which Defendants knew or should have known would result  due  to  Defendants' Natural actions,  and/or inactions and which Defendants knew or should have known would have  been remediated by available environmental control technology;

l)     When Defendants' Activities, actions, and/or inactions, operating both on and off of Defendants' work sites, caused both sudden and continual releases, spills, emissions, and discharges of hazardous gases, chemicals, and industrial/hazardous wastes, at various times; and/or

m)     When Defendants' dangerous Activities and instrumentalities, within Defendants' sole management and exclusive control, caused releases, spills, emissions, and discharges of hazardous gases, chemicals, and industrial/hazardous  wastes  through  Defendants' Activities, actions, and/or inactions, which releases, spills, emissions, and discharges are often "cleaned-up", hidden, remediated, replaced, and/or destroyed by Defendants; which caused and/or combined to cause Plaintiffs' damages that would not have happened in the ordinary course of events; which Plaintiffs' damages would not have occurred without Defendants' negligence; and which Plaintiffs did not contribute to Defendants' negligence or occurrences.

37.     The above-list is by no means exclusive, and Plaintiffs do  not  waive/limit  their ability to submit additional evidence on the issue of breach at the time of trial.

38.     *Res ipsa loquitur* also applies because (i) the character of Plaintiffs' injuries is such that they would not have occurred without negligence, and (ii) the instrumentality that caused Plaintiffs' injuries was under the sole management and control of Defendants.

39.     Defendants' conduct directly and/or proximately caused injury to Plaintiffs, which resulted in the damages detailed below.

40.     Pursuant to the Continuing Tort Doctrine, Plaintiffs' claims do not accrue until Defendants' recurring tortuous conduct ceases. Moreover, the "Discovery Rule" defers accrual of the foregoing causes of action until "discovery" occurs.

41.     Plaintiffs seek unliquidated damages within the jurisdictional limits of this court.

## VII.
## COUNT 2: GROSS NEGLIGENCE - ALL DEFENDANTS

42.     Plaintiffs re-allege all of the allegations in the previous paragraphs, as though set forth fully herein.

43.     In addition, or in the alternative, Defendants are liable to Plaintiffs for Gross Negligence.

44.     Defendants owed the aforementioned legal duties to Plaintiffs when conducting their activities, actions, and/or inactions.

45.     Defendants breached the duty to Plaintiffs through Defendants'  activities, actions, and/or inactions.

46.     Defendants consciously and/or deliberately engaged in recklessness, oppression, fraud, willfulness, wantonness and/or malice through Defendants' Activities, actions, and/or inactions when they caused releases, spills, emissions, and discharges of hazardous gases, chemicals, and

industrial/hazardous wastes created by Defendants on a continuous and consistent basis, and Defendants should be held liable in punitive and exemplary damages to Plaintiffs.

47.     Defendants' conduct directly and/or proximately caused injury to Plaintiffs, which resulted in the damages detailed below.

48.     Pursuant to the Continuing Tort Doctrine, Plaintiffs' claims do not accrue until Defendants' recurring tortuous conduct ceases. Moreover, the "Discovery Rule" defers accrual of the foregoing causes of action until "discovery" occurs.

49.     Plaintiffs seek unliquidated damages within the jurisdictional limits of this court.

50.     The limitations on exemplary damages provided by Texas Civil Practice and Remedies Code Section 41.008(b), do not apply in this case, pursuant to subpart (c) because the conduct of defendants knowingly or intentionally violated Sections 22.04 and/or 32.46 of the Texas Penal Code.

**VIII.**
**COUNT 3: NEGLIGENCE *PER SE* - ALL DEFENDANTS**

51.     Plaintiffs re-allege all of the allegations in the previous paragraphs, as though  set forth fully herein.

52.     In addition, or in the alternative, Defendants are liable to Plaintiffs for Negligence *Per Se*.

53.     By the acts or omissions discussed herein, Defendants' negligence violated statutes designed to protect a class of persons to which Plaintiffs belong against the type of injury suffered by Plaintiffs and which statutes are of the type that impose tort liability.

54.     Specifically, Defendants' negligence, with or without legal permitting and without legal excuse, violated the following statutes - to wit:

a)      **Violation of Texas Administrative Code, TITLE 30 - ENVIRONMENTAL QUALITY, Texas Commission on Environmental Quality (TCEQ) - Chapter 101.**

**§101.4 NUISANCE:** "... No person shall discharge from any source whatsoever one or more air contaminants or combinations thereof, in such concentration and of such duration as are or may tend to be injurious to or to adversely affect human health or welfare, animal life, vegetation, or property, or as to interfere with the normal use and enjoyment of animal life, vegetation, or property." See also Tex. Health & Safety Code Ch. 382 - §§ 382.003(12), 382.0518, 382.085(a), (b); see also Tex. Water Code§ 7.051-53.

b)      **Violation of Tex. Penal Code Ann.§ 22.01 -ASSAULT:** "A person commits an offense if the person intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse and intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive."

c)      **Violation of Tex. Penal Code Ann.§ 22.04 -ASSAULT:** "A person commits an offense if he intentionally, knowingly, or recklessly by omission, causes a child, elderly individual, or disabled individual … serious bodily injury; … serious mental deficiency, impairment, or injury; or … bodily injury."

d)      **Violation of Tex. Penal Code Ann.§ 32.46 – SECURING THE EXECUTION OF A DOCUMENT BY DECEPTION**: "A person commits an offense, if, with intent to defraud or harm any person, he, by deception: … causes another to sign or execute any document affecting property or service or the pecuniary interest of any person."

e)      **Violation of Tex. Civ. Prac. & Rem. Code ("CPRC") § 75.00Z(h):** "An owner, lessee, or occupant of real property in this state is liable for trespass as a result of migration or transport of any air contaminant, as defined in section 382.003(2) of the Texas Health and Safety Code ["Air contaminant" means particulate matter, radioactive material, dust,

fumes, gas, mist, smoke, vapor, or odor, including any combination of those items, produced by processes other than natural], other than odor, only upon a showing of actual and substantial damages by a plaintiff in a civil suit."

f)    **Violation of Tex. Penal Code Ann. § 28.04 - RECKLESS DAMAGE OR DESTRUCTION OF PROPERTY:** "A person commits an offense if, without the effective consent of the owner, he recklessly damages or destroys property of the owner."

55.    Defendants' violations of these statutes are without a legal excuse.

56.    Defendants' actions directly and proximately caused injury to Plaintiffs, which resulted in the damages detailed below.

57.    Pursuant to the Continuing Tort Doctrine, Plaintiffs' claims do not accrue until Defendants' recurring tortuous conduct ceases. Moreover, the "Discovery Rule" defers accrual of the foregoing causes of action until "discovery" occurs.

58.    Plaintiffs seek unliquidated damages within the jurisdictional limits of this court.

## IX.
### PRIVATE NUISANCE - INTENTIONAL NEGLIGENCE and *PER QUOD* - ALL DEFENDANTS

59.    Plaintiffs re-allege all of the allegations in the previous paragraphs, as though set forth fully herein.

60.    In addition, or in the alternative, Defendants are liable to Plaintiffs for Private Nuisance - Intentional, Negligence, and/or *Per Quod.*

61.    The adult Plaintiffs are owners of Plaintiffs' Property.

62.    Defendants intentionally, negligently, and/or unreasonably interfered with and invaded Plaintiffs' Property when Defendants caused releases, spills, emissions, and discharges of hazardous gases, chemicals, and industrial/hazardous wastes through Defendants' Activities,

Certified Document Number: 82333330 - Page 19 of 29

which releases, spills, emissions, and discharges of hazardous gases, chemicals, vibrations, noise, and industrial/hazardous wastes migrated to Plaintiffs' Property through the air; when Defendants caused offensive noises through Defendants ' Activities; when Defendants caused offensive odors and smells through Defendants' Activities; when Defendants caused offensive sights and light pollution through Defendants' Activities and Defendants' equipment, machinery, and/or processes; when Defendants caused offensive and abnormal traffic through Defendants' Activities; and when Defendants caused offensive disturbances in the natural environment to cause wildlife to flee through Defendants' Activities, and which interferences and invasions were abnormal (hereinafter sometimes referred to as "Private Nuisance Activity").

63.     Plaintiffs' Private Nuisance Claim - Intentional Private Nuisance Against Defendants: Defendants' interferences and invasions were intentional in that the Defendants knew that Defendants' Private Nuisance Activity, interferences, and invasions would result or were substantially certain to result from Defendants' Activities, actions, and/or inactions.

64.     Plaintiffs' Private Nuisance Claim - Negligence Private Nuisance Against Defendants: Defendants' Private Nuisance Activity, interferences, and invasions were negligent in that Defendants owed Plaintiffs the legal duty of not releasing, spilling, emitting, or discharging hazardous gases, chemicals, and industrial/hazardous wastes onto the Plaintiffs' Property and not engaging in Defendants' Private Nuisance Activity.

65.     Plaintiffs' Private Nuisance Claim - *Per Quod* Private Nuisance Against Defendants: In absence of any found negligence or intentional private nuisance, the Defendants' Private Nuisance Activity, interferences, and invasions are liableness because Defendants' Activities, actions, and/or inactions and Defendants' Private Nuisance Activity were abnormal and out of place in their surroundings.

66.     Defendants' Activities, actions, and/or inactions and Defendants' Private Nuisance Activity - "the frequency, duration, degree, and extent of [which]" substantially interfered with Plaintiffs' private use and enjoyment of Plaintiffs' Property by, among other things, causing unreasonable fear, apprehension, offense, discomfort, annoyance, sickness, injury to physical health, impairment of physical health, exacerbation of physical health and/or preexisting health conditions, harm from assault on Plaintiffs' senses, nausea, loss of peace of mind, emotional harm/distress, inconvenience, deprivation of enjoyment of property; injury to Plaintiffs' animals and livestock; damage to the natural resources of the environment in and around the Plaintiffs' property; loss of use and enjoyment of Plaintiffs' property; diminution of Plaintiffs' property value; constructive eviction of Plaintiffs from Plaintiffs' property; and loss of Plaintiffs quality of life.

67.     Defendants' Activities, actions, and/or inactions and Defendants' Private Nuisance Activity interfered with Plaintiffs' private use and enjoyment of Plaintiffs' Property.

68.     Defendants' conduct directly and/or proximately caused injury to Plaintiffs, which resulted in the damages detailed below.

69.     Pursuant to the Continuing Tort Doctrine, Plaintiffs' claims do not accrue until Defendants' recurring tortuous conduct ceases. Moreover, the "Discovery Rule" defers accrual of the foregoing causes of action until "discovery" occurs.

70.     Plaintiffs seek unliquidated damages within the jurisdictional limits of this court.

## X.
## TRESPASS TO REAL PROPERTY

71.     Plaintiffs re-allege all of the allegations in the previous paragraphs, as though set forth fully herein.

72.     In addition, or in the alternative, Defendants are liable to Plaintiffs for Trespass to Real Property.

73.    The adult Plaintiffs are owners of Plaintiffs' Property.

74.    Defendants physically, intentionally, and voluntarily entered Plaintiffs' Property when Defendants caused releases, spills, emissions, and discharges of hazardous gases, chemicals, vibrations, noise, and industrial/hazardous wastes through Defendants' Activities, actions, and/or inactions, which releases, spills, emissions, and discharges of hazardous gases, chemicals, and industrial/hazardous wastes continuously migrated onto Plaintiffs' Property through the air.

75.    Defendants' Activities, actions, and/or inactions and Defendants' Trespass Activity - "the frequency, duration, degree, and extent of [which]" substantially interfered with Plaintiffs' private use and enjoyment of Plaintiffs' Property by, among other things, causing unreasonable fear, apprehension, offense, discomfort, annoyance, sickness, injury to physical health, impairment of physical health, exacerbation of physical health and/or preexisting health conditions, harm from assault on Plaintiffs' senses, nausea, loss of peace of mind, emotional harm/distress, inconvenience, deprivation of enjoyment of property; injury to Plaintiffs' animals and livestock; damage to the natural resources of the environment in and around the Plaintiffs' property; loss of use and enjoyment of Plaintiffs' property; diminution of Plaintiffs' property value; constructive eviction of Plaintiffs from Plaintiffs' property; and loss of Plaintiffs quality of life.

76.    Defendants' conduct directly and/or proximately caused injury to Plaintiffs, which resulted in the damages detailed below.

77.    Pursuant to the Continuing Tort Doctrine, Plaintiffs' claims do not accrue until Defendants' recurring tortuous conduct ceases. Moreover, the "Discovery Rule" defers accrual of the foregoing causes of action until "discovery" occurs.

78.    Plaintiffs seek unliquidated damages within the jurisdictional limits of this court.

# XI.
## DAMAGES

79.     Defendants' Activities, actions, and/or inactions, as detailed above, directly and/or proximately caused personal injury and property damage to Plaintiffs', which include the following:

a)      Physical pain in the past, present, and future - for Plaintiffs' symptoms, due to discomfort or disease, which include but are not limited to: unreasonable fear, apprehension, offense, discomfort, annoyance, sickness, injury to physical health, impairment of physical health, exacerbation of physical health and/or preexisting health conditions, harm from assault on Plaintiffs' senses, nausea, loss of peace of mind, emotional harm/distress, inconvenience, and deprivation of enjoyment of property.

b)      Emotional harm and mental anguish in the past, present, and future - for Plaintiffs' symptoms, due to discomfort or disease, which include but are not limited to: unreasonable fear, apprehension, offense, discomfort, annoyance, sickness, injury to physical health, impairment of physical health, exacerbation of physical health and/or preexisting health conditions, harm from assault on Plaintiffs' senses, nausea, loss of peace of mind, emotional harm/distress, inconvenience, and deprivation of enjoyment of property.

c)      Disfigurement in the past, present, and future - for Plaintiffs' symptoms, due to discomfort or disease, which include but are not limited to: unreasonable fear, apprehension, offense, discomfort, annoyance, sickness, injury to physical health, impairment of physical health, exacerbation of physical health and/or preexisting health conditions, harm from assault on Plaintiffs' senses, nausea, loss of peace of mind, emotional harm/distress, inconvenience, and deprivation of enjoyment of property.

d)      Physical impairment in the past, present, and future - for Plaintiffs' symptoms, due to discomfort or disease, which include but are not limited to: unreasonable fear, apprehension, offense, discomfort, annoyance, sickness, injury to physical health, impairment of physical health, exacerbation of physical health and/or preexisting health conditions, harm from assault on Plaintiffs' senses, nausea, loss of peace of mind, emotional harm/distress, inconvenience, and deprivation of enjoyment of property.

e)      Medical expenses in the past, present, and future - for Plaintiffs' symptoms, due to discomfort or disease, which include but are not limited to: unreasonable fear, apprehension, offense, discomfort, annoyance, sickness, injury to physical health, impairment of physical health, exacerbation of physical health and/or preexisting health conditions, harm from assault on Plaintiffs' senses, nausea, loss of peace of mind, emotional harm/distress, inconvenience, and deprivation of enjoyment of property.

f)      Loss of earning capacity in the past, present, and future - for Plaintiffs' symptoms, due to discomfort or disease, which include but are not limited to: unreasonable fear, apprehension, offense, discomfort, annoyance, sickness, injury to physical health, impairment of physical health, exacerbation of physical health and/or preexisting health conditions, harm from assault on Plaintiffs' senses, nausea, loss of peace of mind, emotional harm/distress, inconvenience, and deprivation of enjoyment of property.

g)      Loss of consortium in the past, present, and future - for Plaintiffs' symptoms, due to discomfort or disease, which include but are not limited to: unreasonable fear, apprehension, offense, discomfort, annoyance, sickness, injury to physical health, impairment of physical health, exacerbation of physical health and/or preexisting health

conditions, harm from assault on Plaintiffs' senses, nausea, loss of peace of mind, emotional harm/distress, inconvenience, and deprivation of enjoyment of property.

h) Loss of services in the past, present, and future - for Plaintiffs' symptoms, due to discomfort or disease, which include but are not limited to: unreasonable fear, apprehension, offense, discomfort, annoyance, sickness, injury to physical health, impairment of physical health, exacerbation of physical health and/or preexisting health conditions, harm from assault on Plaintiffs' senses, nausea, loss of peace of mind, emotional harm/ distress, inconvenience, and deprivation of enjoyment of property.

i) Unreasonable fear, apprehension, offense, discomfort, annoyance, sickness, injury to physical health, impairment of physical health, exacerbation of physical health and/or preexisting health conditions, harm from assault on Plaintiffs' senses, nausea, loss of peace of mind, emotional harm/distress, inconvenience, and deprivation of enjoyment of property in the past, present, and future.

j) Property damage to real and personal property.

k) Loss of market value damages, which is the difference in the value of Plaintiffs' Property immediately before and immediately after damage.

l) Loss of actual or intrinsic value damages, which is the value of Plaintiffs' Property to the Plaintiffs in the condition in which it was when it was damaged.

m) Loss of replacement value damages, which is the cost of replacing or reproducing the property.

n) Loss of sentimental value damages, which is the reasonable special value of the property to Plaintiff.

o) Repair damages, which is the value of the reasonable cost of repairs.

Certified Document Number: 82333330 - Page 25 of 29

p)       Loss of use and enjoyment damages.

q)       Loss of use of Plaintiffs' land.

r)       Expenses incurred, as a result of the incidents related to the testing of Plaintiffs'

contaminated air and water and buying replacement and/or remedial devices to address

same.

s)       Unliquidated damages within the jurisdictional limits of this court.

t)       Attorney's fees. *See, inter alia*, Tex. Civ. Prac. & Rem. Code §102.002(b), and other

statutory authority providing same.

u)       Exemplary damages under Texas Civil Practice & Remedies Code§§ 41.001,

41.003(a), *et seq.*, without the limitations of 41.008(b), due to the applicability of

41.008(c).

v)       Pre-judgment and post-judgment interest. Texas Finance Code §304.001, *et seq.*,

and any other applicable law.

w)       Lifetime Medical Monitoring Damages: Plaintiffs were wrongfully and

significantly exposed to Defendants' releases, spills, emissions, and discharges of

hazardous gases, chemicals, and industrial/hazardous wastes through Defendants'

Activities, actions, and/or inactions in and around Plaintiffs' Property. As a result, Plaintiffs

were significantly exposed to Defendants' hazardous gases, chemicals, and

industrial/hazardous wastes ("chemicals"), which significant exposure to Defendants'

chemicals caused Plaintiffs to suffer verifiable and medically cognizable symptoms and

diseases. Additionally, Plaintiffs' exposure significantly increased Plaintiffs' risk of

developing additional medically cognizable and serious diseases. Plaintiffs' potential

medically cognizable and serious diseases could be detected by existing medical

examinations. The medical examinations that exist are different from those typically recommended in the absence of the exposures suffered by Plaintiffs. Early detection of both current symptoms and potential symptoms will help to ameliorate the severity of the disease(s) caused by Defendants' chemicals from Defendants' Activities, actions, and/or inactions. Plaintiffs' increased risk makes early and periodic diagnostic medical examinations reasonably necessary according to contemporary scientific principles.

x)      Abatement, Injunctive, and/or Equitable relief/damages.

y)      Remediation: Plaintiffs seek remediation or the cost of restoring Plaintiffs' Property to its pre-drilling and pre-processing conditions.

z)      Nominal damages for each trespass by each Defendant, in addition to Plaintiffs' actual damages and other damages enumerated above.

## XII.
## EQUITABLE RELIEF

80.     Plaintiffs seek a permanent injunction against Defendants, precluding current and future drilling, production, and refining activities near Plaintiffs' land.

## XIII.
## REQUESTS FOR DISCLOSURE

81.     Under Texas Rule of Civil Procedure 194, Plaintiffs requests that Defendants disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

## XIV.
## JURY DEMAND

82.     Plaintiffs demand a jury trial and tender the appropriate fee with this petition.

Certified Document Number: 82333330 - Page 27 of 29

## XV.
## STATUTE OF LIMITATIONS TOLLED

83.     The recurring wrongful conduct of Defendants, as alleged herein, which has been repeated

over a period of time, constitutes a continuing tort.  Pursuant to the Continuing Tort Doctrine, a

claim for a continuing tort does not accrue until the tortuous conduct ceases, and Defendants'

wrongful conduct has not ceased.  The Continuing Tort Doctrine operates to toll the running of the

two-year limitations period under Section 16.003 of the Texas Civil Practices and Remedies Code.

In addition, Plaintiffs assert the Discovery Rule to toll the running of any statute of limitations.

Finally, Plaintiffs assert the Relation Back Doctrine, pursuant to Texas Civil Practice and

Remedies Code, Section 16.068.

## XVI.
## PRAYER

84.     WHEREFORE, PREMISES CONSIDERED, Plaintiffs ask that the Court issue citation for

Defendants to appear and answer, and that Plaintiff be awarded a judgment against Defendants for

the following: Actual damages; Prejudgment and Post-judgment  interest; Court costs; Exemplary

damages; and all other relief to which Plaintiffs are entitled  at law and in equity.

Respectfully submitted,

**HILLIARD MARTINEZ GONZALES LLP**

By: */s/   Bradford P. Klager*
    Robert C. Hilliard
    State Bar No. 09677700
    bobh@hmglawfirm.com
    John B. Martinez
    State Bar No. 24010212
    john@hmglawfirm.com
    Rudy Gonzales, Jr.
    State Bar No. 08121700
    rudyg@hmglawfirm.com
    Catherine Tobin Hilliard

State Bar No. 24013642
catherine@hmglawfirm.com
Bradford P. Klager
State Bar No. 24012969
brad@hmglawfirm.com
Marion M. Reilly
State Bar No. 24079195
marion@hmglawfirm.com
Jessica J. Pritchett
State Bar No. 24102377
jpritchett@hmglawfirm.com
John C. Duff
State Bar No. 24086979
jduff@hmglawfirm.com
David O.B. Runcie
State Bar No. 24086263
druncie@hmglawfirm.com
719 S. Shoreline Boulevard
Corpus Christi, Texas 78401
Telephone No.: 361.882.1612
Facsimile No.: 361.882.3015

hmgservice@hmglawfirm.com
**\*service by e-mail to this address only**

AND

**Kerry H. Collins & Associates, PC**
Kerry H. Collins
1301 Ballinger St.
Fort Worth, Texas 76102-4577
Telephone No.: (817) 335-9700
Facsimile No.:(817) 335-3669
Email. kcpc@txis.net

**ATTORNEYS FOR PLAINTIFFS**



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   December 4, 2018

Certified Document Number:        82333330 Total Pages:  29

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**